CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2015 MAR -5  PM 2: 51

DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| **KIMBERLY RODRIGUEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 1:13-CV-0147-BL** |
| | § | **ECF** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kimberly Rodriguez seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for supplemental security income benefits under Title XVI of the Social Security Act. The United States district judge transferred this case to the United States magistrate judge, and all parties consented to the jurisdiction of the magistrate judge. (Doc. 7, 29).

After considering the pleadings, the briefs, and the administrative record, this Court affirms the Commissioner's decision and dismisses, with prejudice, Rodriguez's complaint.

## Background

Rodriguez filed an application for supplemental security income on April 1, 2010. (Tr. 14). Rodriguez claims she became disabled on July 28, 2009, due to anxiety and panic attacks, phobias, depression, and borderline intellectual functioning. (Tr. 9, 46, 74, 81, 161, 174, 178). Previously, Rodriguez worked as a sacker and a sorter. (Tr. 41-45, 180, 186-189, 192). Rodriguez completed high school and did not pursue any additional vocational training. (Tr. 40,

179-80).

Following a hearing on March 22, 2012, an Administrative Law Judge (ALJ) determined on May 24, 2012, that Rodriguez was not disabled. Specifically, the ALJ held that Rodriguez's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she had the residual functional capacity (RFC) to perform a full range of work, that she had no past relevant work, and that she was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on April 30, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

### Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work;

and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452.).

## Discussion

The sole issue on appeal is whether the "ALJ erred by not fully and fairly developing the record as to Plaintiff's mental condition" in failing to order a consultative examination of Plaintiff's IQ. (Doc. 26, p. 4-7).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Rodriguez was not disabled within the meaning of the Social Security Act. (Tr. 11-36). At Step 1, the ALJ determined that Rodriguez had not engaged in substantial gainful activity at any relevant time. (Tr. 16). At Step 2, the ALJ determined that Rodriguez had the following severe impairments: "[d]epression, anxiety disorder, panic disorder without agoraphobia, and borderline intellectual functioning." (Tr. 16). At Step 3, the ALJ determined that Rodriguez did not have an impairment or combination of impairments that meets or equal one of the listings under the applicable regulations. (Tr. 21). Before proceeding to Steps 4 and 5, the ALJ determined that Rodriguez had the following RFC:

> She has no limits physically and so can perform the full range of work physically. She can perform jobs involving detailed but not complex instructions; she can have no more than superficial contact with the public, co-workers, or supervisors, and she is limited to occupations that do not require reading or performing math above the elementary school level. [She] can work full-time at this [RFC] on a sustained basis and maintain employment for an indefinite period of time.

(Tr. 22-30). At Step 4, the ALJ determined that Rodriguez had no past relevant work. (Tr. 30). Finally, at Step 5, the ALJ determined that there were a significant number of jobs that exist in the national economy that Rodriguez could still perform. (Tr. 30).

### A. The ALJ was not required to order a consultative examination to determine Rodriguez's IQ

Rodriguez claims that the Step 3 findings are not supported by substantial evidence because the ALJ failed to order an IQ test necessary to properly evaluate whether she met or

equaled Listing 12.05 for mental retardation. (Doc. 26). Rodriguez argues that "treatment notes and psychological evaluations, as well as [her] history of special education classes, provide more than sufficient evidence to raise a suspicion of [her] ability to meet the requirements of Listing 12.05 for mental retardation." (Doc. 26, p. 7). The Court is not persuaded.

A consultative examination is not required by statute. *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir. 1977) (quoting *McGee v. Weinberger,* 518 F.2d 330, 332 (5th Cir. 1975)). The regulations provide that when the information needed "is not readily available from the records of [a claimant's] medical treatment source, or [the Administration is] unable to seek clarification from [the claimant's] medical source, [the Administration] will ask [the claimant] to attend one or more consultative examinations at [the Administration's] expense." 20 C.F.R. §§ 404.1512(e), 416.912(e). Thus, "[u]nder some circumstances,. . . a consultative examination is required to develop a full and fair record." *Pearson v. Bowen,* 866 F.2d 809, 812 (5th Cir. 1989) (quoting *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987)). However, a consultative examination is not always necessary and "[t]he decision to require such an examination is discretionary." *Pearson,* 866 F.2d at 812 (quoting *Jones,* 829 F.2d at 526); *Gutierrez v. Barnhart,* No. 04-11025, 2005 WL 1994289, at *8 (5th Cir. Aug. 19, 2005). The Fifth Circuit clarified that a "'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision." *Turner,* 563 F.2d at 671 (emphasis added); *Jones,* 829 F.2d at 526. Moreover, the claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry'" under the applicable rules. *Pearson,* 866 F.2d at 812 (quoting *Jones,* 829 F.2d at 526). Thus, when evidence in the record supports a conclusion that the claimant is not disabled, a consultative exam is not necessary. *Turner,* 563

F.2d at 671.

The burden is on the claimant to prove that her impairment(s) meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Thompson v. Colvin*, No. 4:12-cv-466, 2013 WL 4035229 at *4 (N.D. Tex. Aug. 8, 2013). To meet or equal a listing, a claimant "must meet *all* of the specified medical criteria." *Thompson*, 2013 WL 4035229 at *4 (quoting *Zebley*, 493 U.S. at 530). Listing 12.05, for mental retardation, is met if the claimant can show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § 404, Subpt. P, App. 1. "Adaptive functions include 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office.'" *Thompson*, 2013 WL 4035229 at *5 (quoting 20 C.F.R. Pt 404, Subpt. P, App. 1 § 12.00(C)(1)). In addition to the requirements of the capsule definition, the claimant must also meet one of the listing's four severity prongs. *Id.*

Here, the ALJ did not have a duty to order an IQ test because Rodriguez does not meet the threshold requirements of Listing 12.05. The record neither supports a finding that Rodriguez suffered from "*significantly subaverage* general intellectual functioning with deficits in adaptive functioning," nor does it establish that any such intellectual deficits were present before age 22. 20 C.F.R. § 404, Subpt. P, App. 1. (emphasis added).

Rodriguez claimed to be disabled due to "anxiety with panic attacks, phobias, depression, and borderline intellectual functioning."[1] (Tr. 74, 81, 178). However, on her application for

---

[1] The Diagnostic and Statistical Manual IV-TR (DSM-IV-TR) draws a distinction between "borderline intellectual functioning" and "mental retardation." *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH

benefits, Rodriguez admitted that she was not disabled before age 22. (Tr. 161). Rodriguez also admitted that she could read and write English, (Tr. 177), that her daily activities included walking the dog, that she had no problems with personal care, (Tr. 201), that she prepares her own meals, is able to do laundry, wash dishes, clean the bathroom, and help vacuum, (Tr. 202), that she can go out alone and shop for personal items and groceries, (Tr. 203), that she is able to count change, (Tr. 203), that her hobbies include getting on her brother's computer to look up music, drawing, reading, watching television, and that she is able to do these things "pretty well," (Tr. 204), and that she spends time with others, namely talking to people on the computer. (Tr. 205). In a brief she filed with the review board in March 2012, Rodriguez claimed she suffered from, *inter alia*, "mild intellectual functioning," but argued that her impairments met or equaled Listing 12.04 for affective disorders, not Listing 12.05 for mental retardation as she now claims. (Tr. 246-47).

In June 2010, Rodriguez visited Dr. Charles Rudolph, Ph.D., for a psychology consultative exam. (Tr. 250-56). Dr. Rudolph was specifically directed to evaluate Rodriguez's panic attacks, phobias, depression, and borderline intellectual functioning. (Tr. 253). Dr. Rudolph noted that Rodriguez had "no apparent problems comprehending and following the conversation or asking questions." (Tr. 252). Rodriguez reported that her sleep patterns were skewed and she went to sleep between 2:00-3:00am and awoke between 11:00am and 12 noon.

---

EDITION, TEXT REVISION 41-44, 740 (4th ed. 2000) [hereinafter DSM-IV-TR]. In describing borderline intellectual functioning, the DSM-IV-TR notes that "[t]his category can be used when the focus of clinical attention is associated with borderline intellectual functioning, that is, an IQ in the 71-84 range. Differential diagnosis between borderline intellectual functioning and mental retardation (an IQ of 70 or below) is especially difficult with the coexistence of certain mental disorders (e.g., schizophrenia) is involved." *Id.* at 740. Compare this definition with Listing 12.05 and it is quite apparent that the IQ range of borderline intellectual functioning is above the range required to meet the severity prongs of the listing. *See* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.05(B), (C), (D) (all listing requirement of an IQ of 70 or below in order to satisfy the listing criteria).

(Tr. 253). Rodriguez also reported that she was able to bathe, dress, and take care of her personal hygiene, and that her typical activities included doing the laundry and watching the news. (Tr. 253-54). Dr. Rudolph noted that Rodriguez was able to complete tasks quickly. (Tr. 254). The mental status exam found that Rodriguez's behavior was appropriate, relaxed, and calm, that she appeared to be in a good mood, cooperative, and focused, thought processes were normal, there was no evidence of perceptual distortions or hallucinations, stream of thought was logical and goal directed, but abstract thinking was below average. (Tr. 254-55). Dr. Rudolph diagnosed Rodriguez with depressive disorder not otherwise specified, panic disorder without agoraphobia, "borderline intellectual functioning, rule out," obesity, allergies, economic, and occupational problems. (Tr. 256).

Rodriguez underwent a mental RFC assessment in July 2010. (Tr. 257-60). The assessment revealed that Rodriguez can "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting." (Tr. 259). Rodriguez only suffered moderate limitations in understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 257-60). The Psychiatric Review Technique, also from July 2010, found that Rodriguez only suffered from affective disorders, anxiety related disorders, and required a rule out of borderline intellectual functioning. (Tr. 257-60). However, the doctor did not find that Rodriguez had any significant subaverage general intellectual functioning with deficits in adaptive functioning, with an onset before age 22. (Tr. 265).

Notably, mental retardation was not an alleged cause for her inability to work until this appeal. (Tr. 9-10, 37-58, 246-49); *Flores v. Astrue*, 246 Fed. App'x 540, 543 (10th Cir. 2007) (declining remand because "[t]hroughout the administrative proceedings, neither [claimant] nor

her lawyer ever requested a consultative examination of this mental impairment—instead she raised this issue for the first time on her appeal to the district court."). As discussed earlier, Rodriguez bore the burden at Step 3 to show that she met Listing 12.05. She failed to meet this burden. Once again, an ALJ's duty to further develop the record is triggered only when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Thompson v. Colvin*, No. 4:12-CV-466-Y, 2013 WL 4035229, at *6 (N.D. Tex. Aug. 8, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Moreover, the ALJ is not required to investigate every conceivable claim of a claimant. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) ("we emphasize it is not the ALJ's duty to be the claimants advocate"). Here, this duty was not triggered. Although Rodriguez was placed in special education classes, she successfully completed high school and was gainfully employed until 2006. *See Thompson*, 2013 WL 4035229 at *5 (noting that there was no evidence of adaptive functioning deficits because, *inter alia*, "[a]lthough [the claimant] attended special education classes, [he] graduated from high school."); (Tr. 179, 246, 253-54). The fact that she has been unemployed since is not evidence of any intellectual disability. Indeed, Rodriguez admits to have voluntarily quit her prior jobs because of reasons unrelated to any disability she claims now, and actively sought employment through 2011. (Tr. 23, 41-45, 216, 254). Regardless of whether the ALJ ordered an IQ evaluation during disability determination, when there is a gross lack of evidence—as there is here—showing a significantly subaverage general intellectual functioning, deficits of adaptive functioning, and the existence of mental retardation before age 22, a claimant cannot meet Listing 12.05. This point of error is overruled.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Rodriguez's complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED**.

Dated this _5th_ day of March, 2015.


_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**